NELSON, et al, Respondents v. CONSOLIDATED SAND & STONE CO., Appellant

(283 N. W. 164.)

(File No. 8088. Opinion filed December 30, 1938.)

*Odin R. Davis,* of Sioux Falls, for Appellant.

*Tom Kirby* and *Blaine Simons,* both of Sioux Falls, and *Ray E. Dougherty,* of Omaha, Neb., for Respondents.

ROBERTS, P. J.   This is the second action to reach this court brought to enjoin the defendant from discharging water containing sand on the premises of the plaintiffs and for damages for the injury inflicted by the deposit of sand thereon.   The first case

is reported in 60 S. D. 557, 245 N. W. 253. In that case the plaintiffs alleged: 'That the defendant * * * is engaged in the business of digging and washing sand. That one of the plants of the said defendant company is located on a hill to the east of plaintiffs' real estate as in this complaint described, and at said plant the said defendant company does dig sand and wash the same with water, and has been so doing for at least four years. That the said defendant company during said time did, and now does, allow the water so used by it to wash sand and which water becomes full of sand particles to flow upon the land of these plaintiffs herein described, in such volume that the said water has carried upon and is carrying upon the land of these plaintiffs sand in large quantities which said sand has been and is being deposited upon the land of these plaintiffs." The cause was tried to the court resulting in a judgment in favor of the plaintiffs for $1,900, and the judgment was affirmed by this court on appeal.

In the second case, the action now before us, the complaint is substantially the same as in the first case except that it alleges that the defendant company "during the year 1933, from the 15th day of March of said year, and during the year 1934 and during the year 1935, did and now does allow the water so used by it" to wash sand upon the premises of the plaintiffs and "that defendant company piles its sand in such a way on its own land that when there is any rain, said sand is washed upon the land of these plaintiffs." The trial court found that the plaintiffs were damaged since March 15, 1933, in the sum of $1000. Judgment was entered accordingly and the defendant has appealed from the judgment and order denying motion for new trial.

Defendants contend that the former action and judgments are a bar to a subsequent claim for damages and that the fact that all the issues which could have been disposed of in the former action may not have been determined does not alter the character of the cause of action. The former action was not for damages which necessarily resulted from the establishment of defendant's plant, but it was for the injury caused by the negligent manner of operating the plant. Plaintiffs in that action recovered judgment for damages to the time of trial, and not for all damages past, present and prospective. The great weight of authority is to the effect that there is a right to successive actions where the

injuries in the nature of a continuing or recurrent nuisance are caused by the negligent manner of operating a legal enterprise. See discussion and cases cited in note in L. R. A. 1916E, p. 997. We have examined the authorities cited by counsel for defendant and do not find that they sustain his contention. The conclusion that there was a right to successive actions for recurrent injuries renders immaterial a consideration of the rule for which defendant contends that a party who inadvertently, or by his own negligence or mistake, and without fault or fraud of the adverse party, sues for and recovers only a part of his claim, is estopped to bring a second action for the residue. The character of the injury was not of such a nature that one action would have enabled plaintiffs in the former action to recover full compensation for damages, past present and prospective.

Defendant also contends that the findings of the trial court are not sustained by the evidence. The trial court found in part as follows: "That at said plant the defendant does dig sand and wash the sand with water, and has been doing so since March 15, 1933; that the said defendant company, since the 15th day of March, 1933, has allowed quantities of water so used by it to wash sand and which water, in the washing of sand, became full of sand particles, silt and clay, to flow on the land of the plaintiffs; that said water, containing said material, flowed upon and over the land of the plaintiffs heretofore described in such volume that the water has carried upon and deposited upon the lands of the plaintiffs, in large quantities, sand, silt, and clay." It is claimed that there is no evidence that the defendant at any time subsequent to the trial in the first action permitted waters used by defendant to wash sand to flow upon the lands of the plaintiffs; that the findings exclude any damage to the lands of the plaintiffs from any other source.

The water containing silt and other particles removed from sand and gravel in the operation of the plant flows into a reservoir. After the settling of the silt and other particles the water is returned to a well from which source the water is supplied for the plant. The dirt and silt are conveyed from the reservoir by means of a slack line cable and dumped into a depression, a distance of 150 feet from the reservoir. The washed materials are stored in bins ready for loading into railroad cars and trucks. There is a

seepage of water from the plant. A concrete basin was construc-
ted in the summer of 1933 into which seepage water flows and is
returned to the well. Prior to the construction of the basin the
seepage flowed into a depression, a distance of several hundred
feet from the plant.

Plaintiff, Signa Nelson, testified in part as follows: "I am
familiar with the condition of our land during 1933, 1934 and
1935. I know of an occasion when there was flood water from the
defendant's land near the plant over onto our land, but I don't
remember the dates. The water came down from the defendant's
plant on our land during those years. It was mostly by storm
water when there was a heavy rain, clay and silt from up by the
plant would wash down and be deposited upon our land. I have
seen water coming down onto our land during the period I have
mentioned. The particular time that I have seen it was during
very heavy rains. I was down to our property the day after the
heavy rain that we had the latter part of May or the first of June.
That was in 1936. There was a great deal more sand and clay
washed down. I have been down there when I have seen leaking
and overflow from the bins and that was on the defendant's prop-
erty. There have been a few times since May 15, 1933. I don't
remember the specific dates. When it rains it always carries a cer-
tain amount of their sand piles down through that course. Those
are the sand piles that Mr. Wheeler testified were placed along
the railroad tracks over by their plant. Some of these are washed
down by heavy rains through the course that I have indicated."

Plaintiff, Roy Nelson, testified in part as follows: "There is
a reservoir now immediately south of defendant's plant. In the
course of time that fills up with clay and dirt. Defendant uses
a slack line cable to get that out and dumps it into the ravine to
the south of the reservoir. This ravine leads down through our
land. I have seen the dirt and clay from the defendant's plant
wash down this ravine. This spring it was running down there
three times that I know of. It was after rains. I have heard some
mention here of a culvert that was taken out in 1933. It was after
the culvert was taken out that the water was forced down along
the highway to the south culvert. Only during heavy rains have
I seen water flow from the plant on the hay meadow. It washed
fine silt. I have seen sand and gravel and sediment washed down

through the center draw. It came clear across onto our land. This is particularly true after a heavy rain and even when there wasn't heavy rains. The substance that came down from the plant was mostly fine silt and sand and clay." This witness on cross examination testified: "I do not know very well the construction up at the plant of the defendant. The last time I was up to the plant of the company was about a year ago, I believe, a little over a year ago. I wasn't on the switch track at the point where they load from the plant into cars and trucks, but I could see up there. I didn't see the tanks constructed there under the switch track of concrete about three feet deep right at the well. They were not loading at the time I was there. There was some seepage water running out of the bins. I noticed it running down a little way, but I didn't know where it went to. That was just a light sprinkling of water coming out of the bins at that time. I haven't seen the Consolidated Sand and Stone Company run any water down to the north of their plant to the north ditch lately. I haven't seen any for a period of better than two years only when it was raining. I wouldn't say for sure whether I have seen any since the summer of 1933. A number of years ago when the other case was tried in the fall of 1930 they had a little ditch running down onto the Groth land in which they carried the seepage water."

Defendant constructed a wall or dam in a ravine near its plant to prevent wash of silt and other materials upon adjoining premises, and there was evidence that rock and other materials were deposited on the premises of the plaintiffs caused by a break in this wall.

The complaint alleges that defendant so piled sand on its land that rains continued to wash part of it upon the land of the plaintiffs. But the court made no finding as to this alleged element of damage. The evidence tends to show that during heavy rains quantities of clay and other materials from the land of the defendant were deposited upon that of the plaintiffs. But there is neither allegation nor finding that such materials were so negligently placed on defendant's land that damage to the plaintiff resulted. The question presented is whether the evidence sustains the findings that "defendant company, since the 15th day of March, 1933, has allowed quantities of water used by it to wash sand, and which water, in the washing of sand, became full of particles, silt

and clay, to flow upon the lands of the plaintiffs," and that this flow of water has caused a large accumulation of sand, silt and clay on the premises of the plaintiffs. We have carefully examined the record and are convinced that these findings are not sustained by the evidence.

It is also contended by counsel that the extent of the damages was not established with reasonable certainty; that there was no evidence which gave the court a basis for determining the extent of the damages resulting from any injury subsequent to March 15, 1933. In cases such as the one under consideration the cause of action is referable to the recurrent injury and the damages arising therefrom and not to the original injury. The measure of proof necessary to enable a court to fix the amount of damage must be considered with respect to the cause from which they proceed. It is sufficient to decide the appeal before us upon the record made in the trial court. There is then no issue as to whether damages were proven with reasonable certainty and we would not be justified in considering the contention under an assumption that the evidence would have justified a recovery on a different theory.

The judgment and order appealed from are reversed.

RUDOLPH and SMITH, JJ., concur.

WARREN, J., dissents.

POLLEY, J. (dissenting). I am not able to concur in a reversal of the judgment in this case. I think the findings of fact are amply supported by the evidence. The damages awarded by the court are not excessive, and to reverse the judgment on the ground stated in the opinion and send the case back for retrial, would in my opinion be sacrificing the substantive rights of the plaintiff to a mere technicality.